### E. A. RHODES v. T. & S. GIBBS.

1. The wife cannot charge her separate property for the payment of an account made on a promissory note executed jointly with her husband for any purpose except for necessaries for herself and her family, or for benefit of her separate property.

2. (On rehearing.) The wife, by mortgage or deed of trust executed by herself and husband, and duly acknowledged under the statute, *can* encumber her separate property for debts of her husband incurred prior to the execution of such mortgage or trust deed.

3. A married woman cannot by simple contract, even in writing, alone or jointly with her husband, encumber her separate property except for necessaries for herself, her family, or separate property.

4. A married woman, by deed of herself and husband, duly acknowledged, can convey her separate property to any use whatever.

APPEAL from Walker. Tried below before the Hon. J. R. Burnett.

This is a suit by Gibbs & Gibbs on the note of J. F. Rhodes and wife to them, dated sixteenth of October, 1866, due the first day of January, 1869, and to foreclose a mortgage given by Rhodes and wife on the day after the date of the note on certain lands of the community, but mostly of the separate property of the wife, to secure the payment of the debt, and another debt of the husband therein named, to which the wife was not a party.

The petition set up the death of the husband afterwards; that the wife had qualified as survivor of the community, and prayed judgment against her in her individual and representative character, and for decree of foreclosure. It admitted that appellant was the wife of her

co-maker, J. F. Rhodes, at the time the note and mortgage were made, and that most of the lands embraced in the mortgage were of her separate property, owned by her prior to her marriage.

*Baker & Maxey*, for appellant.—1. Upon the first assignment it is suggested, that the petition showing that the note was the joint note of husband and wife, it was necessary further to allege that the debt was contracted by the wife for necessaries furnished herself and children, or by her authority, or for the benefit of her separate property; otherwise, it presented no cause of action as against her, and a judgment by default will be reversed. (Trimble v. Miller, 24 Texas, 214; Covington v. Burleson, 28 Texas, 368; Menard v. Sydnor, 29 Texas, 257; Lynch v. Elkes, 21 Texas, 229.)

The statement of facts shows that the debt sued on was contracted and incurred by the husband before the note was given. A past consideration, wholly executed before a promise is made, is not sufficient to sustain a promise unless the consideration arose at the instance of the promissor. (Craig v. Atwood, 1 Stew. & Por. Ala. R., 83.) In Jackson's Administrator v. Jackson *et al.*, 7 Ala. R., 791, a note had been executed by the debtor and delivered to the creditor, who afterwards requested the debtor to add a surety to it. This was done by the latter, and it was held that as there was no new consideration, as between the original parties, and none as between the payee and the surety, the liability of the latter could not be enforced.

The husband being liable for the debt, the mortgage as to him was good to bind the community property conveyed by it; and for this purpose, and to this extent, the suit might be well sustained against the wife, as survivor of the community, and the mortgage foreclosed

upon the common property. But if her signature to a note with her husband presents no cause of action against her, without averments and proof that the debt was contracted by her, or her authority, or for the benefit of her separate property, as held in Trimble v. Miller, and Hutchinson v. Underwood, 27 Texas, 255 ; or if it was obtained for a debt of her husband for which she was not liable, and without a new consideration (which should be averred and proven), then the note being void as to her, there was no consideration to sustain the mortgage as to her separate property. The mortgage is a mere security for the payment of the debt, and if the debt is barred by limitation the creditor has no remedy on the mortgage. (Duty v. Graham, 12 Texas, 427; Ross v. Mitchell, 28 Texas, 150; Perkins v. Sterne, 23 Texas, 561.) So, if the note and petition do not show a cause of action against the wife ; or if, upon the facts, the note is without consideration as to her, then, there being no liability against her on the note, the creditor has no remedy as against her on the mortgage.

2. The facts show that the wife mortgaged her separate statutory estate, owned by her prior to her marriage, and including all she had, to secure the payment of the pre-existing debt of the husband. This the court below held she might do, upon the authority of Hollis and Wife v. Francois & Border, 5 Texas, 195, and other cases approving the doctrine in that case ; and that her act was irrevocable, except for fraud in its execution. Now, with profound respect for this court, and for those cases as authority upon the points necessarily adjudicated by them, and with due veneration for the high character of the court that decided them, whose learning and ability as jurists we admire and appreciate, the counsel for appellant respectfully asks this court to review those cases for the purpose of ascertaining if the principles there an-

nounced are consistent with subsequent adjudications of this court, and with the spirit and intent of our statutory law, and if they should be held now as authority upon this point. (Cartwright v. Hollis, 5 Texas, 152; Hollis and Wife v. Francois & Border, 5 Texas, 185; Magee v. White, 23 Texas, 182; Sampson & Keene v. Williamson, 6 Texas, 102; Shelby v. Burtis, 18 Texas, 644.)

It is, therefore, most respectfully submitted that the question of the wife's power to mortgage irrevocably her statutory estate, as a security for the payment of the pre-existing debt of the husband, has never been adjudicated by this court, upon a point directly and necessarily presenting it, so as to be regarded as *res judicata*.

But, if it should be thought that the question was decided in Francois & Border's case, upon such a state of facts as not to leave it an open one, then it is suggested that the conclusions of the court in that case were arrived at by analogy to the English equity authorities; first, in holding the wife's signature to a note *prima facie* evidence to charge her separate estate (5 Texas, 161, 198); and secondly, to the powers of *femmes covert*, under the same authorities, to affect or charge by mortgage their separate equitable estates. (5 Texas, 199, and authorities there cited.)

But we cannot regard this as the proper source from which to derive the rules by which to measure the powers and disabilities of married women over their statutory estates in Texas now.

By the civil law the wife could not become surety for the husband, but the statutory estate is created and defined by our own law; the object of the law is to secure it to the wife and protect her in the enjoyment of it. The law (Pas. Dig., Arts. 4643, 4644) prescribes both the rule and the limit of her power to charge it; she can neither charge nor encumber it in any other manner, or to any

greater extent than therein prescribed. (Magee v. White, 23 Texas, 182.) Her right to alienate it is given by the statute, and is not incident to her ownership of the fee ; and the mode of alienation is prescribed. Her power to charge it, as well as the mode and extent to which she may charge it, being prescribed by positive law, and the right as well as the mode of alienation being also thus created and prescribed, excludes all other modes of charging, encumbrancing and conveying, and limits her powers over her estate to the language and object of the law.

*Expressio unius est exclusio alterius* is a maxim which Mr. Broom says was never more applicable than when applied to the construction of a statute. A mortgage is only a security for a debt ; the debt is the consideration that feeds and sustains it; and therefore a mortgage is not a conveyance of the estate within the meaning and intent of the law, but it is a charge upon the estate mortgaged; and if it is true that she can charge it only in the manner and to the extent prescribed by positive law, then this manner of charging it is not included, unless upon such averment and proof as would charge her upon her promissory note. But it is argued that the greater includes the less ; and therefore, if the wife, in the mode prescribed by law, can alienate the fee, she may, under the same sanction, pass a less interest or encumber her estate.

In the case of Sampson & Keene v. Williamson, 6 Texas, 123, Justice Lipscomb, in his dissenting opinion, shows very clearly that this principle or maxim does not apply to this case. He says, "If the maxim is examined it will be found to have obtained its currency by its application to a different class of cases, growing for the most part out of wills and testaments."

For instance, if a will contain a power to sell for a particular purpose, and in the execution of the trust it be ascertained that the fund can be raised, and the purpose

accomplished by mortgage, whereby the estate directed to be sold may be saved, ultimately, to the heir or legatee, then the interest of the latter requires this to be done, and a court of chancery will compel it for this purpose. Here the power to sell includes the power to mortgage, because there are two objects to be accomplished, if practicable; and we apprehend that the true application of the maxim will be found only in this sense and for the reason assigned. But in the case being considered, the wife is under no direction or compulsion to sell, and hence under none to mortgage.

Again, the language of the statute is, "Where a husband and wife have signed and sealed any deed, or other writing purporting to be a conveyance of any estate," etc. What are we to understand by the word conveyance? The common law was then in force here, and as the Legislature employed a common law term, it is fair to presume that it was invoked in the common law sense and meaning of it. Conveyance is a deed which passes or conveys land from one to another. Conveyance by feoffment and livery was the general conveyance at common law. (Jacob's Law Dic., title Conveyance, Vol. 2, p. 60.) Conveyances were of two kinds—original and derivative. Of the former were feoffment, gift, grant, lease, exchange and partition; of the latter, release, confirmation, surrender, assignment and defeasance. (Blacks. Com., Book 2, 310.) A mortgage is not included in either class.

The word evidently means, primarily, an alienation. The wife's alienation, or conveyance of her real estate, was absolutely void at the common law (1 Par. on Con., Ch. 18, Sec. 4, p. 365); and hence, by statute, she was enabled to convey or alienate it in the manner prescribed. But a mortgage is not in fact a conveyance, because the mortgagor remains the real owner until the proceedings for foreclosure are finally closed. (Bryan v. Butts, 27

Barb., 505; Perkins v. Dibble, 10 Ohio, 438; Duty v. Graham, 12 Texas, 427; Man v. Falcon, 25 Texas, 271.) Until foreclosed the conveyance is not perfect under the statute; but the mortgage, as to the wife, is in the nature of her agreement for a sale of her real estate, which is wholly void both at law and in equity, though made with the assent of the husband. (1 Parsons on Contracts, Ch. 18, Sec. 4, p. 365-6; Butler v. Buckingham, 5 Day, 492; Watrous v. Chalker, 7 Conn., 224.) Hence, she may revoke the agreement at any time before foreclosure of the mortgage, which is the perfecting of the conveyance; because, until the conveyance is perfected, the grantee takes no title.

Again, our marital rights act (Paschal's Digest, 4643) places a limitation upon married women to bind their separate estates. They can encumber their separate property only in the mode and for the objects enumerated in the statute, because these estates are the creatures of the statute, derived it is true from the civil law, yet nevertheless subject to the limitations placed upon them by statute law. As to these limitations, they are the creatures of statute, and are subject to such restrictions as the Legislature may see fit to impose. Married women in this State can create no personal liability so as to bind their separate estates, except for necessaries furnished themselves and their children (where the husband is unable to do so), and necessary expenditures and charges for the benefit of their separate estates. (Brown v. Ector, 19 Texas, 346 ; Booth v. Cotton, 13 Texas, 359.) Unlike estates created for the benefit of married women through the intervention of a trustee in common law States, where liabilities may be enforced and the rents and profits of the property may be made subject to their payment, these are statutory estates, and the statute must furnish the rule by which the wife's power to create liabilities

and charges upon her must be measured and adjudicated. Hence, in a late case in Alabama, it has been expressly decided that the husband and wife cannot enter into a mortgage of her statutory separate estate for the purpose of subjecting it to sale; and if they do, a court of chancery will not permit the mortgage to be enforced by sale of the wife's separate estate, if she object. (Bibb v. Pope, 43 Ala., 190.)

We invite especial attention to this case, because it is a recent decision upon the very point in this case, and not heretofore brought to the attention of this court. It is true that the *jus disponendi* is an incident of the ownership of property, but the law as to the disposition of it contemplates a sale of it for the benefit of the wife, and not a mortgage for the payment of the husband's debt.

It has been decided in California that a married woman cannot create a personal liability by the execution of a promissory note, acknowledged as an instrument affecting her separate estate. Her capacity to contract so as to bind her separate estate is confined to exceptional cases under the sole traders's act of that State. (See Maclay v. Love, 25 Cal. R., 367; Smith v. Greer, 31 Cal. R., 476.)

Applying the doctrine of these cases to the cause now before the court, what are the exceptional cases under our statute in which a married woman may bind her separate estate? We answer, first, for necessaries furnished herself and children; second, for expenditures necessary for the benefit of her separate estate. This is the extent of her power under our statute. This is clearly the object and intent of the statute, to be derived from the words of limitation found in its provisions.

No brief for appellees has reached the Reporters.

WALKER, J.—The mortgage of the wife of her separate estate, which might be good in equity, might not be

good under our statute; she could pledge her property
for the payment of her husband's debts; she could give
it to him, or she could appoint it to his use.  But courts
of equity would nevertheless exercise the strictest scru-
tiny over all such acts of the wife, holding them void if
there was any appearance of fraud, coercion or undue in-
fluence to bring them about.  But under our statute a
mode is prescribed for the conveyance of her property,
and unless this be followed, the wife can only bind her
separate property for necessaries furnished to herself and
children, and expenses upon her separate property. (See
Hollis and Wife v. Francois & Border, 5 Texas, 195.)

The petition in this case was demurable, and the court
erred in overruling the exceptions to it; secondly, in ren-
dering judgment against the appellant on the note, and in
foreclosing the mortgage as to her separate property.

In the case of Cartwright against Hollis, 5 Texas, 152,
quoted by the appellees, the question was as to the power
of the wife to bind herself and her separate property by
the execution of a promissory note.  Her power to mort-
gage her separate estate for the payment of a pre-existing
debt of the husband was *non coram judice.*   The case of
Trimble v. Miller, 24 Texas, 214; Covington v. Burleson,
28 Texas, 368; Menard v. Sydnor, 29 Texas, 257; as well
as Lynch v. Elkes, 21 Texas, 229, are authorities in point
against the doctrine of Hollis and Wife against Francois
& Border, as claimed and understood by counsel for ap-
pellees.

The case of Brown v. Ector, 19 Texas, 346, is also an
authority against the ruling of the District Court in this
case.   Perhaps we can more clearly state the rule by ref-
erence to the case of Hutchinson and Wife, 27 Texas, 255,
than otherwise.   It is there laid down "that the wife can-
not charge her separate property for the payment of an
account made, or a promissory note jointly executed with

her husband, for necessaries purchased for her husband, or for other members of the family than herself and children."

The judgment of the District Court is reversed and the cause remanded.

March 13, 1871.

REVERSED AND REMANDED.

*E. B. Pickett*, for appellees on motion for rehearing.— The only question involved in this case is whether a married woman can mortgage her separate estate for the payment of her husband's debts. This question has long since been settled. (Shelby v. Burtis, 18 Texas, 644–9; Hollis v. Francois, 5 Texas, 195; Sampson & Keene v. Williamson, 6 Texas, 102.)

The authorities cited in the opinion do not touch the question. This court must overrule the above authorities to sustain the opinion.

No other brief for appellees has come to the hands of the Reporters.

McADOO, J., *on rehearing.* — This case is upon a rehearing. It is an action based on a note of J. F. Rhodes and wife (K. A. Rhodes, the appellant), and to foreclose a mortgage executed in accordance with the forms of law by Rhodes and wife, on the day after the note was executed, to secure the payment of the note. This mortgage was given on community property, and also upon certain lands belonging to the wife in her separate right.

The petition set up the death of the husband, and that the wife has qualified as survivor of the community, and prayed for judgment against her in her individual and representative character and for a decree of foreclosure. The defendant (appellant here) excepted to the sufficiency

of the petition to charge her personally, because of her coverture at the date of the execution of the mortgage, and for the want of the allegation that the debt secured by the mortgage was created by her for necessaries for herself or children, or for the benefit of her separate property.

She also pleaded specially that the debt was not of the character to bind her separate estate, but that it was the debt of her husband, created by him before the execution of the mortgage, and that both the notes and the mortgage were, as to her, without consideration.

The court below overruled her exceptions, and a jury being waived a judgment was rendered as prayed for by the plaintiffs. Exceptions were taken to these rulings, and an appeal was taken to this court.

The appellant assigns as errors the action of the court—

1. In overruling her exceptions to the petition.

2. In rendering judgment against appellant on the note.

3. In foreclosing the mortgage on her separate property.

This brings up the question, so often heretofore before this court, can the wife, under our Constitution and laws, encumber by mortgage her separate estate to secure the payment of a debt created by the husband before the execution of the mortgage? We are asked in this case to reopen this legal question, to review the former decisions of the court, and to reverse the rules laid down in Hollis and Wife v. Francois & Border, 5 Texas, 195, and the various decisions running down through the succeeding volumes of the reports.

It is insisted by appellant's counsel that in some of the later cases the original rulings of the court have been already shaken. We know of but one case in which an intimation of the kind is to be found. We refer to the case of Magee v. White, 23 Texas, 180, in which a most

learned and able decision of Judge Bell was delivered, and in which he does intimate an opinion that the former decisions of the court were unsound. That suit was upon a note only, without mortgage, and the part of the opinion referred to was not therefore authoritative, if even the position had been squarely taken.

We are cited by counsel to the cases of Lynch v. Elkes, 21 Texas, 229 ; Trimble v. Miller, 24 Texas, 214 ; Covington v. Burleson, 28 Texas, 368; and Menard v. Sydnor, 29 Texas, 257, as authorities also to support the position that in *all cases* where suit is brought against a married woman, it is necessary to allege and prove that the debt was contracted by the wife for necessaries furnished herself and children, or for the benefit of her separate property. None of these authorities support the position, while one of them (Menard v. Sydnor) clearly recognizes the authority of a married woman to encumber her property by deed of trust, without averment of the uses for which the debt was contracted. In that case Menard and wife executed a deed of trust to Sydnor on land of the wife's, with the power to sell their interest in the land conveyed within one year, at a price to be agreed upon by the grantors, so as to reimburse to Sydnor $570 and interest thereon ; but if not sold in one year, then Sydnor was to sell the land at public auction ; and if the land should bring more than enough to satisfy the debt and interest, the overplus should be paid over to the mortgagors ; but if it should bring less than the debt, then Sydnor should take the whole sum and the debt should be considered as settled. Sydnor did not sell at all, but brought suit, averring that the land was unsold, and praying for the sale of the land and for general relief. The defendants pleaded that Sydnor had not complied with his contract. Judgment was rendered foreclosing the mortgage, and that "should the proceeds of the sale be insufficient to satisfy

the debt and costs, the plaintiff shall have execution for the balance."

Mr. Justice Coke, delivering the opinion of the court, clearly recognizes the binding force of the deed of trust according to its terms, but very justly restricts the obligation to the very terms. He says: "The defendant in error seeks the enforcement of a contract when it is beneficial, and must stand to its terms when it is onerous. *The defendant in error has a right to recover* according to the terms of the deed of trust which he relies on to establish his demand, and that is his principal debt and interest, if the land will bring it. If it will not bring so much, then he can recover only what it will bring."

In Trimble v. Miller, and Covington v. Burleson, suits were upon simple notes of hand, made in each case by the husband and wife, and were, of course, held not to bind the wife; while in Lynch v. Elkes the note was given by husband and wife to secure the purchase money; and the court decided that the wife was only bound as to the property purchased, and that a judgment over against her could not stand. That a married woman can make no simple contract, even in writing, either alone or jointly with her husband, which will bind her upon merely tendering in proof the contract, is too well settled to admit of discussion. This court has so held the law to be in a long line of decisions. It has been uniformly held, that such a contract must have been made by the wife, or by her authority, and that the consideration of the contract was for necessaries for herself, or her children, or for the use and benefit of her separate property. In other words, a married woman, by a simple contract, express or implied, does not, by operation of law, create a liability against her which binds her separate estate; but if the debt be for necessary supplies for herself and children, or for the benefit of her separate property, and the hus-

band be insolvent, it has been held that the law itself imposes a liability against her which will reach her entire separate estate.   (Christmas v. Smith, 10 Texas, 123; Brown v. Ector, 19 Texas, 346; Milburn v. Walker, 11 Texas, 329; Trimble v. Miller, 24 Texas, 214.)

It is this character of debts, which grow out of the acts of a married woman, and the uses of the consideration of the contract, which create a legal obligation on her.   That legal obligation is *in personam*.   Execution will run against her as if she were a *femme sole*, and will reach every part of her estate not exempt from forced sale.

It is to this class of contracts that the cases just referred to related, and not to contracts by solemn deed, executed by the husband and wife in the manner prescribed by law.   (Paschal's Digest, Art. 1003.)   A reference to the statute which created this personal liability will not fail to satisfy the legal mind of the correctness of the view just taken.

It reads as follows:   "The husband and wife may be jointly sued for all debts contracted by the wife for necessaries furnished herself or children, and for all expenses which may have been incurred by the wife for the benefit of her separate property."   (Pas. Dig., Art. 4643.)

Under this statute, the mere purchase by her, whether at a stipulated and agreed price, or the article be ordered by her, a suit will lie on the agreed terms of the purchase, or in assumpsit for the reasonable value, if the purchase be for the "necessaries" specified.

But the class of obligations in which this case falls is of a very different character.   The obligation is solemnly and voluntarily incurred, not created by law.   The action is not one *in personam* only, but *in rem* as well.   It grows out of her solemn deed, and is supported by her right to convey.   The Constitution (Art. 11, Sec. 14) declares her right to own and hold, in her own name, and

in her separate right, every species of property. Under the law (Pas. Dig., Art. 1003) she has the unlimited power, with the joinder of her husband, and in the mode prescribed, for any consideration, valuable or good, to convey such property. She can sell it, and give the purchase money to a profligate husband, or pay his debts, or make any other disposition of it she chooses. She may donate it by deed of gift to a worthy relative or a public charity. In short, her power of conveyance in the mode prescribed is simply unlimited.

We have decided, at the present term of this court, in Jordan *et al.* v. Peak and Wife, that a deed of trust or mortgage, executed to secure the payment of a debt, was the conveyance of the fee for the uses and purposes of the trust; and when executed by the husband and the wife, in the solemn mode prescribed by law, that the mortgagees had no power to withdraw from the contract or to stay the execution of the trust. The whole subject here treated of was by us most thoroughly considered in our investigation of that case; and our investigation of this but strengthens our convictions of the correctness of the principles laid down in that case.

We must confess that we cannot conceive how the law should permit a married woman absolutely to convey away her entire estate at will, and for any moving consideration that might prompt her; and yet she cannot convey in trust or by mortgage with the same freedom. If she can sell *all* of her interest in her separate estate and pay her husband's debts with the proceeds, may she not with equal freedom convey it in trust to secure that debt?

There has been expended, in a line of decisions on this subject, by our predecessors, a great amount of labor, and there has been a great amount of learning displayed in establishing the law on the subject of the wife's power

to bind her separate estate.    We do not propose anew to enter upon that field.    We think it unnecessary to seek for the light to guide our feet, either in the civil law (from which it is supposed our law of marital rights originally sprang), or in the rules which govern the equitable estates of married women in England.    We think the Constitution and laws of this State have fully established the marital rights of parties, without reference to any system of foreign laws.

Those laws have been construed by our predecessors. We see no reason to change their rulings.    We believe the law as it is and a sound public policy alike demand that we adhere to the former decisions of this court on this subject.

We therefore recede from the former opinion in this case, revoke the former judgment of this court, and affirm the judgment of the court below.

October 21, 1873.

AFFIRMED.